# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AEQUOR HEALTHCARE
SERVICES, LLC,

      Plaintiff,

v.

MEDA HEALTHCARE, LLC,
LOGAN FRANK, DANIEL NEARY,
and EMILY SCHULER

      Defendants.

CIVIL ACTION
NO.


JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND REQUEST FOR JURY TRIAL

Plaintiff, Aequor Healthcare Services, LLC ("Aequor"), by and through undersigned counsel, brings this suit against Defendants, Meda Healthcare, LLC ("Meda"), Logan Frank ("Frank"), Daniel Neary ("Neary"), Emily Schuler ("Schuler") and alleges as follows:

## PARTIES

1. Aequor is a Delaware limited liability company, with its principal place of business and headquarters in New Jersey. Aequor conducts business nationwide.

2. Defendant Meda is listed as a limited liability company under the laws of Delaware with its principal place of business located at 15331 W. Bell Road, Suite

212, Surprise, Maricopa County, Arizona 85374. Meda conducts business nationwide.

3.   Defendant Frank is an individual, who upon information and belief, resides in and may be served in Arizona.

4.   Defendant Neary is an individual, who upon information and belief, resides in and may be served in Tennessee.

5.   Defendant Schuler is an individual, who upon information and belief, resides in and may be served in California.

## **JURISDICTION AND VENUE**

6.   Aequor asserts claims against Defendants under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832-39 ("DTSA") and the Computer Fraud and Abuse Act, 18 U.S.C.A. §§ 1030.

7.   Thus, this Court has federal question jurisdiction under 28 U.S.C § 1331.

8.   This Court can exercise supplemental jurisdiction over Aequor's state law claims against Defendants under 28 U.S.C. § 1367 because the state law claims are so related to the present action that they form part of the same case or controversy.

9. Venue in this Court is proper under 28 U.S.C § 1391(b) because a substantial part of the events giving rise to the claims occurred or is occurring in this district.

10. Defendants' actions harmed Aequor at its headquarters in New Jersey.

11. Meda markets itself as a national company and conducts systematic and continuous business in New Jersey.

## STATEMENT OF FACTS

### Aequor's Business and Its BCD

12. Aequor's success depends in large part on developing and combining knowledge of (a) the needs of organizations for temporary staff and (b) the availability, qualifications, and identity of candidates to fill those roles.

13. Aequor has expended considerable resources to develop this business reputation and customer goodwill.

14. One of Aequor's most valuable resources is its BCD, which it first created over ten years ago.

15. The Bullhorn Candidate Database ("BCD") is a confidential compilation of data containing detailed information of prospective medical staff and teaching candidates. The BCD contains information for hundreds of thousands of potential staff candidates who could potentially take a role as a healthcare professional or teacher in various healthcare facilities or schools.

16.     The information in the BCD is exhaustive and includes, among other information:

- First and Last Name
- Primary Phone Number
- Work Phone Number
- Mobile Phone Number
- Email Address
- Skills Status
- Education
- Distance Willing to Travel
- Desired Location
- Certifications
- Credentials
- Work Authorization (Country Candidate Is Allowed to Work)
- Employment Preference
- Date Available to Work
- Gender
- Current Title

17.     The BCD cannot be easily replicated.

18.     The BCD is not available for general public access.

19.     To maintain an edge over Aequor's competitors, Aequor must continuously expend resources to recruit candidates and continuously update potential candidates' contact and skill-set information in the BCD.

20.     The BCD is integral to Aequor's business operations because when a healthcare or school retains Aequor to assist with a staff shortage, Aequor uses the information in the BCD to contact potential candidates to fill the shortage. The compilation of information allows Aequor to quickly identify ideal candidates and

4

pair them with open positions, giving Aequor a competitive advantage over individuals or companies without the same data, knowledge, and ability to rapidly utilize the same.

21.    The compilation of the information contained in the BCD is a trade secret. It took Aequor over ten years and extensive financial investment to build the BCD.

22.    The BCD undeniably constitutes one of Aequor's most valuable assets.

23.    The BCD provides a competitive advantage in the healthcare and education staffing industries. Each healthcare or education staffing company keeps its database confidential (if it has one). It would be devastating to Aequor's business if the BCD were to be disclosed to a competitor.

24.    If a competitor were able to gain access to the BCD, they would immediately gain a significant advantage over Aequor and other industry leaders. The competitor would reap the benefit of immediately having an extensive network of carefully selected, highly skilled candidates at its fingertips, without having to expend the significant resources Aequor spent over years to collect, catalogue, and verify this information.

25.    Indeed, Aequor has taken reasonable measures to protect the confidentiality of the BCD such as keeping it stored on a secure, password protected environment. Aequor also requires its employees to sign employment agreements,

which reasonably restrict such employees both during and after termination of their employment from, among other things, using, disclosing and/or keeping Aequor's confidential information, which includes the BCD.

26.   In addition to the BCD, Aequor maintains a database with pricing and pay data ("Pricing Database"). The Pricing Databases are critical to Aequor's ability to maintain a competitive advantage.

27.   If a competitor obtained the Pricing Databases, it could steal Aequor's business by paying a particular candidate (i.e., a traveling nurse) more than Aequor pays them, and charge a particular client (i.e., medical facility or provider), less than what Aequor charges. Over time, the competitor would be able to eviscerate Aequor's market share through improper means.

**Meda**

28.   Meda is a healthcare staffing firm that provides workforce staffing services in the healthcare industry.

29.   Meda provides services that are similar to Aequor's and markets itself in some of the same locations.

30.   Meda, a smaller and younger company, competes with Aequor to recruit staffing candidates.

31.     It is not uncommon for a healthcare provider to ask both Meda and Aequor to provide medical staff for a facility. Meda and Aequor then compete for that business by finding candidates as quickly as possible.

32.     In or about December 2023, Aequor became aware of Meda's campaign to actively solicit Aequor's employees, including those under employment agreements containing confidentiality restrictions and restrictive covenants, for the purpose of gaining an unfair competitive advantage over Aequor by unlawfully obtaining Aequor's confidential and trade secret information.

33.     Meda induced several Aequor employees under employment agreements containing confidentiality restrictions and restrictive covenants to leave Aequor and join Meda to perform roles at Meda the same or similar to that performed at Aequor.

34.     Meda has induced at least three Aequor employees to leave Aequor and join Meda. The former employees Aequor knows to have subsequently joined Meda include Logan Frank, Daniel Neary, and Emily Schuler.

35.     Meda has recently demonstrated an interest in hiring Aequor's Executive Staff.

36.     Logan Frank held the role of Vice-President before departing Aequor for Meda in July 2023.

37.     Daniel Neary held the role of Senior Director of Account Management before departing Aequor for Meda in December 2023.

38.     Emily Schuler held the role of Recruiter before departing Aequor for Meda in August 2024.

39.     Frank, Neary, and Schuler have been utilizing confidential trade secret information to contact and solicit Aequor clients in their new roles at Meda.

40.     Aequor became aware of Defendants' solicitations of Aequor's clients when Aequor received an email that was mistakenly sent to Neary's old email address at Aequor, but it was addressed to Neary in his new role at Meda regarding a staffing offer from one of Aequor's clients listed in the BCD.

41.     Meda has used Aequor's confidential and trade secret information to solicit current or prospective Aequor candidates and other clients, including inducing Aequor's clients not to enter into or to end their business relationship with Aequor.

42.     Meda has been on notice since at least May 2024 of the substance of Aequor's employment agreement with its employees, including the employees' post contractual obligations, as well as Aequor's intent to enforce the same.

43.     By letter dated May 31, 2024, Aequor informed Meda that Logan Frank and Daniel Neary, then-new employees of Meda hired to perform roles similar to that which they performed with Aequor, remained under certain post-employment

contractual obligations with Aequor. In particular, Aequor informed Meda of Frank and Neary' agreement to refrain from the following:

    a.  disclosing or making use of Aequor's confidential information without Aequor's prior written consent;

        i.  The term "confidential information" is broadly defined in Section 2 of the Employment Agreement to include, among other things, customer names, prospects names and/or information relating to Aequor's business and activities and the manner in which Aequor does business.

    b.  soliciting Aequor's clients or accounts for one year after termination of employment with Aequor; and

    c.  from calling upon, soliciting, or assisting in the solicitation of any person or firm introduced to Frank or Neary, or a client or account of Aequor for the purpose of selling or supplying any product or service competitive with the products or services of Aequor,

44.    Aequor attached a copy of Frank and Neary's employment agreements to the May 31, 2024 letter from Aequor to Meda. A copy of the May 31, 2024 letter from Aequor to Meda is attached at Exhibit "A."

45.    Each of Frank and Neary acknowledged receipt of the letter and indicated Meda and each former employee understood their post-employment obligations to Aequor and would comply with the same.

46.    Upon information and belief, Frank has not complied with his post-employment obligations and Meda has aided Frank in violating his post-employment obligations.

47.    Upon information and belief, Neary has not complied with his post-employment obligations and Meda has aided Neary in violating his post-employment obligations.

48.    Although she has only recently left employment with Aequor for Meda, upon information and belief, Schuler also has not complied with her post-employment obligations and Meda has aided Schuler in violating her post-employment obligations.

49.    Further, upon information and belief, Meda has continued its unfair campaign of obtaining Aequor's confidential and trade secret information from former Aequor employees and inducing former Aequor employees to otherwise breach their post-employment covenants.

**Logan Frank Accesses Aequor Data and then Joins Meda**

50.    On or about December 2, 2019, Aequor hired Frank as an employee.

51.    As part of his employment, Frank executed an employment agreement with Aequor. Frank's employment agreement is attached as Exhibit "B."

52.    The employment agreement contained a confidentiality clause that described Confidential Information as the following:

**2. Confidential information**

Confidential information shall mean (i) production process, marketing techniques and arrangements, mailing lists, financial information, customer names, prospects names and/or information relating to Aequor's business and activities and the manner in which Aequor does business; products developed or derived there from. (ii) Source and object codes, flow charts, algorithms, coding sheets, routines, sub-routines, compilers, assemblers, design concepts and related documentation and manuals (iii) All other material or information related to the business or activities of Aequor which are not generally known to the others engaged in similar business or activities. The lack of any marking or statement that particular information is confidential information shall not affect its status, as confidential information. Confidential information shall not include information in the public domain not as a result of a breach of any duty owed to Aequor by Employee or any other person. (b) Information already known to the employee prior to the date of this agreement (c) Information published or disseminated by Aequor without restrictions to persons other than Employees and (d) Information identified in writing by Aequor as not being confidential information.

53.    The confidentiality provision of Frank's employment agreement is the same or similar to the employment agreements Aequor has entered into with its employees over the course of the last several years.

54.    While employed at Aequor, Frank was promoted to Vice-President and he had high level access to Aequor's proprietary and confidential trade secret information, such as customer lists, nurse rates, business plans, commissions, the (BCD), and (the Pricing database).

55.    On or about July 17, 2023, Frank resigned from Aequor. Pursuant to his employment agreement, Frank was required to return all of Aequor's confidential information and property, including a company issued laptop.

11

56. To remind Frank of his post-employment contractual obligations, Aequor's attorney sent Frank a letter on May 31, 2024 and sent a copy to Meda. A copy of this letter is attached as Exhibit "C."

57. Upon information and belief, Frank accessed Aequor's proprietary, confidential and trade secret information, including the BCD and Pricing Database, shortly before tendering his resignation from Aequor.

58. Following his resignation from Aequor, Frank was notified that he was required to return his company issued laptop that contains confidential Aequor information.

59. Frank retained possession of Aequor's laptop and confidential information for six months, until the laptop was finally returned in February 2024.

60. Aequor has suffered damages as a result of Defendant Frank's retainment of Aequor's property and confidential information in excess of $5,000.

**Daniel Neary Accesses Aequor Data and then Joins Meda**

61. On or about December 2, 2019, Aequor hired Neary as an employee.

62. As part of his employment, Neary executed an employment agreement with Aequor. Neary's employment agreement is attached as Exhibit "D."

63. The employment agreement contained a confidentiality clause that described Confidential Information as the following:

**2. Confidential information**

Confidential information shall mean (i) production process, marketing techniques and arrangements, mailing lists, financial information, customer names, prospects names and/or information relating to Aequor's business and activities and the manner in which Aequor does business; products developed or derived there from. (ii) Source and object codes, flow charts, algorithms, coding sheets, routines, sub-routines, compilers, assemblers, design concepts and related documentation and manuals (iii) All other material or information related to the business or activities of Aequor which are not generally known to the others engaged in similar business or activities. The lack of any marking or statement that particular information is confidential information shall not affect its status, as confidential information. Confidential information shall not include information in the public domain not as a result of a breach of any duty owed to Aequor by Employee or any other person. (b) Information already known to the employee prior to the date of this agreement (c) Information published or disseminated by Aequor without restrictions to persons other than Employees and (d) Information identified in writing by Aequor as not being confidential information.

64.    The confidentiality provision of Neary's employment agreement is the same or similar to the employment agreements Aequor has entered into with its employees over the course of the last several years.

65.    While employed at Aequor, Neary had high level access to Aequor's proprietary and confidential trade secret information, such as customer lists, nurse rates, business plans, commissions, the BCD, and the Pricing database.

66.    On or about December 19, 2023, Neary resigned from Aequor. Pursuant to his employment agreement, Neary was required to return all of Aequor's confidential information and property, including a company issued laptop.

67.    Neary retained his company issued laptop containing proprietary confidential information for two months, until it was returned in February 2024.

68.    Aequor has suffered damages as a result of Defendant Neary's retainment of Aequor's property and confidential information in excess of $5,000.

69.    To remind Neary of his post-employment contractual obligations, Aequor's attorney sent Neary a letter on May 31, 2024 and sent a copy to Meda. A copy of this letter is attached as Exhibit "E."

70.    Upon information and belief, Neary accessed Aequor's proprietary, confidential and trade secret information, including the BCD and the Pricing database, shortly before tendering his resignation from Aequor.

**Emily Schuler Accesses Aequor Data and then Joins Meda**

71.    On or about February 19, 2019, Aequor hired Schuler as an employee.

72.    As part of her employment, Schuler executed an employment agreement with Aequor. Schuler's employment agreement is attached as Exhibit "F."

73.    The employment agreement contained a confidentiality clause that described Confidential Information as the following:

**2. Confidential information**

Confidential information shall mean (i) production process, marketing techniques and arrangements, mailing lists, financial information, customer names, prospects names and/or information relating to Aequor's business and activities and the manner in which Aequor does business; products developed or derived there from. (ii) Source and object codes, flow charts, algorithms, coding sheets, routines, sub-routines, compilers, assemblers, design concepts and related documentation and manuals (iii) All other material or information related to the business or activities of Aequor which are not generally known to the others engaged in similar business or activities. The lack of any marking or statement that particular information is confidential information shall not affect its status, as confidential information. Confidential information shall not include information in the public domain not as a result of a breach of any duty owed to Aequor by Employee or any other person. (b) Information already known to the employee prior to the date of this agreement (c) Information published or disseminated by Aequor without restrictions to persons other than Employees and (d) Information identified in writing by Aequor as not being confidential information.

74.    The confidentiality provision of Schuler's employment agreement is the same or similar to the employment agreements Aequor has entered into with its employees over the course of the last several years.

75.    While employed at Aequor, Schuler had high level access to Aequor's proprietary and confidential trade secret information, such as customer lists, nurse rates, business plans, commissions, the BCD, and the Pricing database.

76.    On or about August 31, 2024, Schuler resigned from Aequor. Pursuant to her employment agreement, Schuler was required to return all of Aequor's confidential information and property, including a company issued laptop.

77.    Upon information and belief, Schuler accessed our proprietary, confidential and trade secret information, the BCD and the Pricing database, shortly before tendering her resignation from Aequor.

78.    Aequor requested Schuler return her company issued laptop following her resignation, but to date has not done so. Schuler is currently in possession of Aequor's confidential information and laptop.

79.    Aequor has suffered damages as a result of Defendant Schuler's retainment of Aequor's property and confidential information in excess of $5,000.

## CONDITIONS PRECEDENT

80.    All conditions precedent to the commencement or maintenance of the actions alleged have occurred or the occurrence of such has been waived by Aequor.

## COUNT I

### Misappropriation of Trade Secrets Under the Defend Trade Secrets Act, 18 U.S.C §§ 1831-39 ("DTSA")
### Against all Defendants

81.    Aequor incorporates the allegations of paragraphs 1 – 80 as if set forth in full herein.

82.    This is an action for misappropriation of trade secrets in violation of the DTSA.

83.    Aequor possesses trade secrets and other confidential information and as more particularly described herein, it has taken steps to protect the secrecy of that information.

84.    Specifically, the BCD and Pricing Databases are Aequor trade secrets that are related to Aequor's services that are used in, or intended for use in, interstate commerce.

85.    Aequor derives independent economic value from the BCD and Pricing Databases by virtue of their secrecy. Aequor maintained reasonable measures to ensure the secrecy of this information.

86.    As former Aequor high-level employees, Frank, Neary, and Schuler were privy to various trade secrets that belong to Aequor, including the BCD and Pricing Databases.

87.     Because of their employment agreements, Frank, Neary, and Schuler had a contractual duty and obligation to maintain the secrecy of the BCD and Pricing Databases. Frank, Neary, and Schuler were aware of their personal obligation to keep the BCD and Pricing Databases secret even after no longer being employed at Aequor. Meda was also aware that Frank, Neary, and Schuler had an obligation to keep the BCD and Pricing Databases confidential.

88.     Defendants have misappropriated the BCD and Pricing Databases via Frank, Neary, and Schuler, and potentially other former Aequor employees under post-employment obligations of confidentiality to Aequor and have used the trade secrets for economic benefit of Meda to the detriment of Aequor.

89.     Specifically, Defendants acquired and used the BCD and Pricing Databases without consent and Defendants knew or had reason to know that the BCD and Pricing Databases are trade secrets that (1) were acquired by improper means, (2) were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets, or (3) were derived from or through a person who owed a duty to Aequor to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

90.     As a result, Aequor has suffered the loss of customer goodwill and other intangible benefits and will continue to do so in ways that are incapable of precise calculation, and for which monetary damages alone would be inadequate. Aequor's

17

competitive advantage in the marketplace is critically dependent on Aequor's ability to maintain the secrecy of its confidential, proprietary, and sensitive business information.

91. This misappropriation of trade secrets by Defendants has also caused damages to Aequor in the form of out-of-pocket costs, diminished revenue, lost profits, lost business opportunities, reputational harm, and other damages. In addition, Aequor is entitled to disgorgement of Defendants' ill-gotten profits as a result of the misappropriation and use of Aequor's trade secrets.

## COUNT II

### Misappropriation of Trade Secrets Under the New Jersey Trade Secrets Act, § 56:15-1 ("NJTSA") Against all Defendants

92. Aequor incorporates the allegations of paragraphs 1 – 92 as if set forth in full herein.

93. This is an action for misappropriation of trade secrets in violation of the NJTSA.

94. Aequor possesses trade secrets and other confidential information and as more particularly described herein, has taken steps to protect the secrecy of that information.

18

95.    Specifically, the BCD and Pricing Databases are Aequor trade secrets that are related to Aequor's services that are used in, or intended for use in, commerce.

96.    Aequor derives independent economic value from the BCD and Pricing Databases by virtue of their secrecy. Aequor maintained reasonable measures to ensure the secrecy of this information.

97.    As former Aequor high-level employees, Frank, Neary, and Schuler were privy to various trade secrets that belong to Aequor, including the BCD and Pricing Databases.

98.    Because of their employment agreements, Frank, Neary, and Schuler had a contractual duty and obligation to maintain the secrecy of the BCD and Pricing Databases. Frank, Neary, and Schuler were aware of their personal obligations to keep the BCD and Pricing Databases secret even after no longer being employed at Aequor. Aequor was also aware that Frank, Neary, and Schuler had an obligation to keep the BCD and Pricing Databases confidential.

99.    Defendants have misappropriated the BCD and Pricing Databases via Frank, Neary, and Schuler, and potentially other former Aequor employees under post-employment obligations of confidentiality to Aequor and have used the trade secret information for economic benefit to the detriment of Aequor.

100. Specifically, Defendants acquired and used the BCD and Pricing Databases without consent and Defendants knew or had reason to know that the BCD and Pricing Databases are trade secrets that (1) were acquired by improper means, (2) were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets, or (3) were derived from or through a person who owed a duty to Aequor to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

101. As a result, Aequor has suffered the loss of customer goodwill and other intangible benefits and will continue to do so in ways that are incapable of precise calculation, and for which monetary damages alone would be inadequate. Aequor's competitive advantage in the marketplace is critically dependent on Aequor's ability to maintain the secrecy of its confidential, proprietary, and sensitive business information.

102. This misappropriation of trade secrets by Defendants has also caused damages to Aequor in the form of out-of-pocket costs, diminished revenue, lost profits, lost business opportunities, reputational harm, and other damages. In addition, Aequor is entitled to disgorgement of Defendants' ill-gotten profits as a result of the misappropriation and use of Aequor's trade secrets.

## COUNT III
### Computer Fraud and Abuse
### Against Defendants Frank, Neary, and Schuler

103.    Aequor incorporates the allegations of paragraphs 1 – 102 as if set forth in full herein.

104.    Aequor's computers have been used in "interstate or foreign commerce or communications" and is therefore a "protected computer" as defined by 18 U.S.C. § 1030(e)(2).

105.    Defendants Frank, Neary, and Schuler intentionally accessed and retained Aequor's computers and caused the copying and transmission of information from the computers and its files without authorization.

106.    In doing so, Defendants Frank, Neary, and Schuler intentionally and recklessly caused damage to Aequor and obtained a value in excess of $5,000 in violation of the Computer Fraud and Abuse Act, 18 U.S.C.A. §§ 1030(a)(5)(A)(i)-(iii) and (a)(5)(B)(i). These damages include, without limitation, the costs Aequor has incurred to ascertain the extent of the Defendants unauthorized access and damage to Aequor's computer systems.

## COUNT IV
### Tortious Interference with Business and Contract Relations
### Against Defendant Meda

107.    Aequor incorporates the allegations of paragraphs 1 – 106 as if set forth in full herein.

21

108. Meda interfered with Aequor's contractual relationships between it and its former employees, and, upon information and belief, Meda induced Aequor's clients not to enter into or to end their business relationships with Aequor. Meda made the unlawful solicitations to Aequor's current and/or prospective clients by using information obtained from former Aequor employees in violation of the former Aequor employees' post-contractual obligations to Aequor and/or by using former Aequor employees to contact Aequor clients in violation of the former Aequor employees' post-contractual obligations to Aequor.

109. Meda acted improperly and without privilege to engage in its wrongful conduct when it induced Aequor's clients not to enter into or to end their business relationship with Aequor and when it induced former Aequor employees to breach their obligations to Aequor.

110. By inducing Aequor's clients not to enter into or to end their business relationships with Aequor and by inducing former Aequor employees to breach their obligations to Aequor, Meda acted purposely and with malice and with the intent to harm Aequor.

111. But for Meda's interference, Aequor had a reasonable probability of continuing and maintaining such relationships with its clients and potential clients, including those contacted by Meda.

112. Meda's wrongful conduct has caused financial injury to Aequor in the form of loss and misuse of proprietary assets, loss of profits, loss of business goodwill, loss of customers, a loss of future business opportunities, reputational harm, and other damages.

## COUNT V
### Breach of Post-Employment Contractual Obligations
### Against Defendant Frank, Neary, and Schuler

113. Aequor incorporates the allegations of paragraphs 1 – 112 as if set forth in full herein.

114. Aequor's post-employment contractual obligations are valid, and enforceable.

115. Aequor's post-employment contractual obligations are reasonable in duration, territory, and scope.

116. Defendants Frank, Neary, and Schuler breached the post-employment contractual obligations.

117. As a direst and proximate result of Defendants Frank, Neary, and Schuler's breaches of the post-employment contractual obligations, Aequor has suffered irreparable harm, injury, and damages, including, but not limited to, lost profits, damage to its relationships with customers, and damage to its business reputation and goodwill, and Aequor is entitled to recover damages to compensate for such harm and losses.

## PRAYER FOR RELIEF

WHEREFORE, Aequor prays for judgment and relief against Defendants as follows:

    a.  Order Meda and those persons, individuals, or entities acting in concert therewith (including Frank, Near, and Schuler) to immediately return the BCD and Pricing Databases to Aequor and to destroy any copies.

    b.  Order Meda and those persons, individuals, or entities acting in concert therewith (including Frank, Near, and Schuler) to immediately destroy any information or data that was copied, transferred or exfiltrated from the BCD, Pricing Databases and Aequor laptops.

    c.  Enter a final judgment in Aequor's favor and against Defendants for monetary damages, including, but not limited to, all amounts necessary to compensate Aequor for Defendant's wrongful conduct, including attorneys' fees.

    d.  Such other relief as the Court deems just and proper.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## CERTIFICATION PURSUANT TO L. Civ. R. 11.2

Pursuant to L. Civ. R. 11.2, the undersigned hereby certifies that this matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Respectfully submitted, this 4th day of November, 2024.

FREEMAN MATHIS & GARY, LLP

Christopher G. Donnelly, Esq.
cdonnelly@fmglaw.com

*Counsel for Plaintiff*

FREEMAN MATHIS & GARY, LLP
One Riverfront Plaza, 1037 Raymond Blvd., Suite 910
Newark, New Jersey 07102
(973) 536-1456 (telephone)