NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AEQUOR HEALTHCARE SERVICES, LLC,

    Plaintiff,

    v.

MEDA HEALTHCARE, LLC *et al.*,

    Defendants.

No. 24cv10280 (EP) (AME)

**OPINION**

**PADIN, District Judge.**

Plaintiff Aequor Healthcare Services, LLC brings federal claims under the Defend Trade Secrets Act, 18 U.S.C. §§ 1831–39, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, as well as state claims under the New Jersey Trade Secrets Act, N.J. Stat. Ann. § 56:15-1, and breach of contract claims against Defendants Logan Frank, Daniel Neary, and Emily Schuler (the "Individual Defendants"). D.E. 23 ("Second Amended Complaint" or "SAC"). Aequor also brings federal claims under the Defend Trade Secrets Act and the Computer Fraud and Abuse Act, as well as state claims under the New Jersey Trade Secrets Act, and for tortious interference with contract against Defendant Meda Health, LLC ("Meda"). SAC.

Defendants collectively move to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6). D.E. 31-1 ("Motion" or "Mot.").[1] Aequor opposes. D.E. 33 ("Opp'n"). Defendants reply. D.E. 34. Because this Court finds that it may not exercise jurisdiction over any of the Defendants, it will **DISMISS** this action *without prejudice*.

---

[1] Defendants filed their notice of motion at D.E. 31 and their memorandum of law at D.E. 31-1. For ease of reference to Defendants' arguments, this Court refers to Defendant's memorandum of law.

I.  **BACKGROUND**

    A.  **Factual Background[2]**

Aequor is a limited liability company headquartered and incorporated in New Jersey. SAC ¶ 1. Its business revolves around placing candidates in temporary staff positions for various clients around the country, including in New Jersey. *Id.* ¶ 13; *see id.* ¶ 44. To accomplish this, Aequor relies on its understanding of its clients' needs for temporary staff and on its understanding of the availability, qualifications, and identities of candidates looking to fill those temporary staff positions. *Id.* Aequor relies in part on its "Bullhorn Candidate Database" ("BCD"), a confidential data compilation containing detailed information on prospective candidates. *Id.* ¶¶ 15–16. Aequor expends resources to continuously update its BCD, which provides Aequor with a competitive edge over its competitors. *Id.* ¶ 20. Aequor also maintains a pricing database, which includes information regarding what Aequor pays candidates and how much clients pay Aequor for those candidates. *Id.* ¶ 28. Both the BCD and Aequor's pricing databases are confidential, which employees may not access during and after their termination from Aequor. *Id.* ¶ 26.

Frank, Neary, and Schuler were all employees of Aequor before they became employees of Meda. *Id.* ¶¶ 41–43. Frank entered into his employment agreement with Aequor in California, where he resided at the beginning of his employment with Aequor. D.E 31-2 ("Frank Decl.") ¶¶ 10–11. Frank then moved to Arizona, where he continued to work for Aequor and where he still

---

[2] The facts in this section derive from the Second Amended Complaint's well-pled factual allegations, which the Court presumes to be true for purposes of resolving this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts in this section also derive from undisputed facts elicited through the parties' briefs as they relate to personal jurisdiction, which this Court may rely on to decide issues of personal jurisdiction. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).

lives. *Id.* ¶¶ 3, 11. Frank entered into his employment agreement with his new employer, Meda, in Arizona. *Id.* ¶ 6. Frank has never worked or resided in New Jersey. *Id.* ¶¶ 4, 7.

Neary entered into his employment agreement with Aequor in California, where Neary resided at the beginning of his employment with Aequor. D.E. 31-3 ("Neary Decl.") ¶¶ 10–11. Neary then moved to Tennessee, where he continued to work for Aequor and where he still lives. *Id.* ¶¶ 3, 11. Neary entered into his employment agreement with his new employer, Meda, in Tennessee. *Id.* ¶ 6. Neary has never worked or resided in New Jersey. *Id.* ¶¶ 4, 7.

Schuler entered into his employment agreement with Aequor in California, where Schuler resided during her employment with Aequor. D.E. 31-4 ("Schuler Decl.") ¶ 10. Schuler entered into her employment agreement with her new employer, Meda, in California where she still lives. *Id.* ¶¶ 3, 6. Schuler has never worked or resided in New Jersey. *Id.* ¶¶ 4, 7.

Meda is a limited liability company headquartered and incorporated in Arizona. SAC ¶ 2. Its business, like Aequor's, revolves around placing candidates in temporary staff positions for various clients around the country, including New Jersey. *Id.* ¶¶ 29–31. Meda advertised twenty jobs for placement in New Jersey, all of which came from a third-party vendor system. Meda has some employees in New Jersey. Frank Decl. ¶ 19. Meda has only two clients in New Jersey, neither of which are subject to Aequor's allegations.[3] *Id.* ¶ 17.

B.     **Procedural Background**

Aequor filed this action on November 4, 2024. D.E. 1. Aequor subsequently filed a first amended complaint as of right on November 22, 2024. D.E. 6. Defendants initially moved to dismiss on January 8, 2025, but did so without first filing a pre-motion letter pursuant to this Court's preferences. *See* D.Es. 11, 12. This Court administratively terminated Defendants' motion

---

[3] Aequor does not dispute this.

to dismiss and ordered Defendants to file a pre-motion letter. D.E. 12. Upon review of the parties' pre-motion letters, this Court also ordered the parties to meet and confer regarding an amended complaint. D.E. 18. Pursuant to the parties' agreement, this Court then permitted Aequor to file its Second Amended Complaint on February 7, 2025. D.E. 22.

In Aequor's Second Amended Complaint, Aequor brings claims regarding misappropriation of trade secrets under 18 U.S.C. §§ 1831–39 (Count I) against all Defendants, misappropriation of trade secrets under N.J. Stat. Ann. § 56:15-1 (Count II) against all Defendants, violations of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030 (Count III) against the Individual Defendants, tortious interference with business and contract relations (Count IV) against Meda, and breach of contract (Count V) against the Individual Defendants. *See* SAC. Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(2), (b)(3), and (b)(6). D.E. 31. Aequor opposes. D.E. 33. Defendants reply. D.E. 34.

## II.     LEGAL STANDARD

### A.     Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 4(k), a district court may exercise personal jurisdiction according to the law of the forum state where it sits. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey law permits the exercise of personal jurisdiction coextensive with the Due Process Clause of the United States Constitution. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. Rule 4:4–4(c)). Therefore, so long as a defendant has "certain minimum contacts with . . . [New Jersey]" and "the maintenance of the suit does not offend traditional notions of fair play and substantial justice," the defendant

may be subject to suit. *O'Connor*, 496 F.3d at 316–17 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[4]

There are two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). General jurisdiction applies to all claims against a defendant when that defendant is "essentially at home." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation, however, is at home in a state only when it is incorporated in the state, when it has its principal place of business in the state, or when its in-state activities are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id. (*quoting *Int'l Shoe*, 326 U.S. at 317).

Specific jurisdiction applies only to claims against a defendant that relate to its contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). To exercise specific jurisdiction over a nonresident defendant, courts must analyze the relationship between the defendant's contacts with the forum and with the plaintiff's claims. *Ford*, 592 U.S. at 359. In analyzing that relationship, courts look at two factors. *O'Connor*, 496 F.3d at 318–19; *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). *First*, the defendant must have purposefully availed itself of the forum state. *Ford*, 592 U.S. at 351. *Second*, "the plaintiff's claims 'must arise out of or relate to the defendant's contacts' with the forum." *Id.* (quoting *Bristol-Myers*, 582 U.S. at 262). "In other words," the first two prongs require "'an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State

---

[4] In *O'Connor*, the Third Circuit evaluated whether a court could exercise personal jurisdiction pursuant to Pennsylvania law. 496 F.3d at 316. Like New Jersey, Pennsylvania's long-arm statute is coextensive with the Due Process Clause of the United States Constitution. *See id.* Therefore, the Third Circuit's approach in *O'Connor* applies to the exercise of personal jurisdiction under New Jersey law too.

5

and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919).

In addition to analyzing the above two factors, the exercise of jurisdiction over the defendant must 'comport with traditional notions of fair play and substantial justice' such that 'the defendant should reasonably anticipate being haled into court in that forum.'" *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003)).

Plaintiffs bear the burden of demonstrating facts that support a court's exercise of personal jurisdiction at the motion to dismiss stage. *Toys "R" Us*, 318 F.3d at 456. Under Rule 12(b)(2), courts may look at sworn affidavits and other evidence outside of the pleadings. *Patterson ex rel. Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990). A plaintiff may, in turn, contradict that evidence. *Dorr v. GCT Global Container Terminals Inc.*, No. 24-1632, 2025 WL 560627, at *1 (3d Cir. Feb. 20, 2025). At the motion to dismiss stage, a district court must still construe disputed facts in favor of the plaintiff and "[w]here the district court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction." *Eurofins Pharma*, 623 F.3d at 155. When a plaintiff does "suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the nonresident defendant] and the forum state,'" courts should deny the defendant's motion to dismiss and permit jurisdictional discovery. *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). "A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma*, 623 F.3d at 157.

6

III.  ANALYSIS

Aequor contends that this Court may exercise both general jurisdiction over Meda and specific jurisdiction over all Defendants.[5] "Each defendant's contacts with the forum state," however, "must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). The Court therefore addresses its ability to exercise personal jurisdiction separately for each of the Defendants.

A.  **There Is No General Jurisdiction Over Meda**

Meda is a limited liability company incorporated in Delaware with its principal place of business in Arizona. It is not incorporated in New Jersey, nor does it have its principal place of business in New Jersey. Nevertheless, Aequor contends that this Court may exercise general jurisdiction over Meda because of Meda's continuous and systematic general business contacts. Opp'n. at 6–8. It is an "exceptional case," however, where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19; *see also Malik v. Chavez v. Dole Food Co., Inc.*, 838 F.3d 205, 223 (3d Cir. 2016) ("[I]t is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business.'" (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)). This case is not an exceptional one.

Aequor points to several categories of conduct that it believes demonstrates that Meda is subject to general jurisdiction in New Jersey. *First*, Aequor relies on the fact that Meda is registered to do business in New Jersey. This argument is misguided. A Supreme Court plurality

---

[5] Aequor does not argue that this Court may exercise general jurisdiction over the Individual Defendants. Mot. at 9–10; Opp'n at 8.

explained in *Mallory v. Norfolk Southern Railway Co.* that a state could compel nonresident corporations to consent to general jurisdiction by registering to do business in that state. 600 U.S. 122, 134–35 (2023). That holding, however, turned on the state statute's explicit requirement for consent to general jurisdiction. *Id.* New Jersey's statutes do not require consent, and this district has long understood—both *before and after* the Supreme Court's plurality opinion in *Mallory*— New Jersey's statues as categorically distinct from statutes that do require consent. *See, e.g.*, *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 175–76 (D.N.J. 2016) (collecting cases and analyzing N.J. Stat. Ann. §§ 14A:13-3(1), 14A:4-1, and 14A:4-2); *Simplot India LLC v. Himalaya Food Int'l, Ltd.*, 2024 WL 1136791, at *10 (D.N.J. Mar. 15, 2024) (further collecting cases).[6] Therefore, Meda's registration to do business in New Jersey does not subject it to general jurisdiction here.

*Second*, Aequor contends that Meda's marketing activities subject it to general jurisdiction here. Aequor points to twenty job openings that Meda posted in New Jersey, Meda employees in New Jersey, and Meda's alleged misappropriation of Aequor's trade secrets to contact clients in New Jersey. But the standard for general jurisdiction is high and Aequor's arguments do not rise to the required level. The Supreme Court, for example, has declined to exercise general jurisdiction over a defendant that had over 2,000 miles of railroad track, a facility, and more than 2,000 employees in the forum state. *BNSF Ry. Co. v. Tyrell*, 581 U.S. 402, 406 (2017). The Supreme Court has also declined to exercise general jurisdiction over a defendant that caried out a "sizeable" amount of business in the forum state. *Daimler*, 571 U.S. at 139. And the Third Circuit has declined to exercise general jurisdiction over an individual who "sometimes engaged"

---

[6] While some courts in this district have held that a statute does not need an explicit reference to general personal jurisdiction, those cases all pre-date the Supreme Court's plurality opinion in *Mallory*. *See, e.g.*, *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456 (D.N.J. 2015).

in conduct within the forum state. *Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 258 (3d Cir. 2022).

All Aequor argues is that in New Jersey, Meda has some (undisclosed number of) employees, recruits a modest number (twenty) of candidate employees for placement, and solicits some (undisclosed number of) clients.[7] Aequor's arguments neither show that Meda's contacts with New Jersey are "continuous and systematic," nor do they show that they are "*so* continuous and systematic so as to render Meda *'at home'*" in New Jersey. *Goodyear*, 564 U.S at 919 (emphases added) (citations modified). The Court therefore cannot not exercise general jurisdiction over Meda.

### B. There Is No Specific Jurisdiction Over Defendants

Specific jurisdiction is a claim-specific inquiry. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Aequor brings intentional tort claims against Defendants, which are subject to the *Calder* "effects test" for determining whether the claims "arise out of or relate to" the defendant's contacts. *IMO Indust., Inc. v. Kiekert AG*, 155 F.3d F.3d 254, 265–66 (3d Cir. 1998) (summarizing *Calder*, 465 U.S. 783). The *Calder* "effects test" requires

> (1) the defendant committed an intentional tort;
>
> (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Id.*

Aequor also brings breach of contract claims against the Individual Defendants, which requires considering "the totality of the circumstances, including the location and character of the

---

[7] Defendants argue that Meda has only two clients in New Jersey. Mot. at 13; Frank Decl. ¶ 17.

contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 256. "[T]he defendant's contacts with the forum [must have been] *instrumental* in either the formation of the contract or its breach." *Id.* (quoting *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)); *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020) (describing the standard for specific jurisdiction in a breach of contract case as "restrictive").

Here, Aequor does not show that its intentional tort claims, or its breach of contract claims arise out of any of the Defendant's activities in New Jersey, and therefore does not show that this Court may exercise specific jurisdiction over Defendants.

### 1. Meda

Aequor brings only intentional tort claims against Meda but Aequor points to nothing indicating that New Jersey was the *focal point* of Meda's allegedly tortious activity.[8] That Aequor's principal place of business is in New Jersey is not enough to confer specific jurisdiction in an intentional tort case. *IMO Indus.*, 155 F.3d at 263 ("[P]ermitting *Calder* to be satisfied on this basis would mean that jurisdiction in intentional tort cases would *always* be appropriate in the plaintiff's home state, since the plaintiff always 'feels' the impact of the tort there."). Instead, specific jurisdiction turns on whether Aequor has shown that Meda purposefully directed its conduct at New Jersey. *IMO Indust.*, 155 F.3d at 265–66. Aequor has not.

---

[8] As discussed above, Aequor brings claims against Meda for misappropriation of trade secrets under 18 U.S.C. §§ 1831–39 (Count I) and under N.J. Stat. Ann. §§ 56:15-1 (Count II), and tortious interference with business and contract relations (Count IV). Misappropriation of trade secrets are treated as intentional torts. *See Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 631 (2015); *PPG Indust., Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*, No. 15-965, 2020 WL 1526940, at *11 (W.D. Pa. Mar. 31, 2020). Tortious interference with business contracts is also treated as an intentional tort. *Remick*, 238 F.3d at 260.

It is not enough that Meda published twenty job postings in New Jersey because Aequor neither alleges that those twenty job postings were part of Meda's tortious activity nor explains how twenty job postings in New Jersey—when Meda places candidates across the country—demonstrates that Meda *focused* its conduct on New Jersey in particular. Moreover, Aequor does not even dispute that Meda serves only two clients in New Jersey, neither of which are subject to Aequor's allegations. When a defendant challenges personal jurisdiction, a plaintiff bears the burden of establishing a court's jurisdiction over the defendant. *Miller Yacht*, 384 F.3d at 97. Aequor has not done so. Aequor has therefore failed to satisfy the *Calder* "effects test" and demonstrate that its claims against Meda arise out of Meda's contacts with New Jersey. *Ford*, 592 U.S. at 351 (quoting *Bristol-Myers*, 582 U.S. at 262). This Court will therefore **DISMISS** Meda from this action ***without prejudice*** because Aequor does not show that this Court would be justified in exercising jurisdiction over Meda in this action.

    2.  *The Individual Defendants*

Aequor brings intentional tort claims and breach of contract claims against the Individual Defendants, but Aequor again does not identify any contacts that the Individual Defendants had with New Jersey that justify the exercise of specific jurisdiction.[9]

None of the Individual Defendants entered into their employment agreements in New Jersey, breached the employment agreements in New Jersey, worked for Aequor in New Jersey, or ever resided in New Jersey. Nor does Aequor allege that any of the Individual Defendants

---

[9] As discussed above, Aequor brings claims against the Individual Defendants for misappropriation of trade secrets under 18 U.S.C. §§ 1831–39 (Count I) and under N.J. Stat. Ann. §§ 56:15-1 (Count II), under 18 U.S.C. § 1030 (Count III), and breach of contract (Count V). Misappropriation of trade secrets are treated as intentional torts. *See Whitchurch*, 97 F. Supp. 3d at 631; *Tie Mao Glass*, 2020 WL 1526940, at *11. Violations of the Computer Fraud and Abuse Act are too. *Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 505 (D.N.J. 2017).

improperly accessed Aequor's trade secret information in New Jersey. Therefore, under either the *Calder* "effects test" or the test for breach of contract, there are no grounds that permit this Court to exercise specific jurisdiction over the Individual Defendants. *Danziger*, 948 F.3d at 130 (finding no specific jurisdiction available over either intentional tort claims or breach of contract claims because defendants did not form or breach the contract in the forum state, nor did they live or work in the forum state).

This Court will therefore **DISMISS** the Individual Defendants from this action ***without prejudice*** because Aequor does not show that this Court would be justified in exercising jurisdiction over the Individual Defendants in this action.[10]

### IV. CONCLUSION

For the reasons described above, the Court will **GRANT** Defendants' Motion and **DISMISS** all Defendants ***without prejudice***. An appropriate Order accompanies this Opinion.

Dated: October 16, 2025

_____
Evelyn Padin, U.S.D.J.

---

[10] Because this Court finds that it cannot exercise jurisdiction over this matter, the Court does not address Defendants' other arguments under Federal Rules of Civil Procedure 12(b)(3) and (b)(6).